UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CINDY MOONSAMMY, *et al.*,

                                        Plaintiffs,                    24 Civ. 2616 (PAE)

                    -v-                                                <u>OPINION & ORDER</u>

DAVID C. BANKS, *et al.*,

                                        Defendants.

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Cindy and Kemraj Moonsammy (the "Moonsammys") are parents to A.M., a 7-year-old girl with severe developmental and physical disabilities. In 2022, after concluding that the individualized education program ("IEP") developed for their daughter by the New York City Department of Education (the "Department") was inadequate, the Moonsammys enrolled A.M. in a specialized private school, the International Institute for the Brain ("iBrain"). At the same time, the Moonsammys filed a due process complaint pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.,* and Article 89 of the New York State Education Law, N.Y. Educ. Law §§ 4401 *et seq.*, seeking an order declaring that (1) the Department had failed to provide A.M. with a free appropriate public education ("FAPE") for the 2020–2021, 2021–22, and 2022–23 school years, (2) iBrain was an appropriate placement for A.M., and (3) the Department was obliged to pay A.M.'s tuition at iBrain.

In 2023, a State Review Officer ("SRO") held with the Moonsammys in relevant part, reversing the contrary decision of an Impartial Hearing Officer ("IHO"). The SRO found that the Department had failed to provide A.M. with a FAPE, that iBrain was an appropriate placement for A.M., and that the Department was obliged to pay for A.M.'s tuition and transportation. He held, however, that the Department need only reimburse the Moonsammys,

rather than pay iBrain directly, and he did not mandate that the Department pay for a 1:1 nurse for A.M.—determinations that the Moonsammys timely appealed to this Court in a related case, *Moonsammy et al. v. Banks et al.*, 23 Civ. 10491 (PAE) (S.D.N.Y.). The Department declined to cross-appeal. Summary judgment briefing in the related case is scheduled to conclude on July 5, 2024.

In this action, the Moonsammys seek preliminary injunctive relief related to pendency for the current school year (2023–24) while they litigate a separate challenge to A.M.'s most recent IEP through the state administrative process. In their view, the unappealed portion of the SRO's decision—specifically, the portion declaring iBrain an appropriate placement for A.M.—serves as the basis for pendency, such that the Department is obliged to pay A.M.'s tuition and related expenses. In the Department's view, because the SRO's decision is on appeal, it cannot serve as the basis for pendency. For the reasons that follow, the Court holds with the Moonsammys, and enjoins the Department accordingly.

## I.    Background[1]

### A.    Facts

#### 1.    A.M.'s Background

A.M., age 7, has various neurological and physical disabilities, including cerebral palsy, severe visual impairment, and a rare form of epilepsy, known as Lennox-Gastaut Syndrome,

---

[1] The facts which form the basis of this decision are taken from the parties' pleadings and submissions in support of and in opposition to the instant motion—specifically, the Moonsammys' Complaint, Dkt. 1 ("Compl."), the 2023 IHO decision adjudicating the Moonsammys' first due process complaint, *id.*, Ex. 1 ("IHO 2023 Dec."), the 2023 SRO decision reviewing the IHO's decision, *id.*, Ex. 2 ("SRO Dec."), the Moonsammys' second due process complaint, Dkt. 10, Ex. 1 ("DPC"), and the recent 2024 IHO decision adjudicating the Moonsammys' second due process complaint, Dkt. 20, Ex. 1 ("IHO 2024 Dec."). The Court also refers to the administrative record of the 2022–23 state proceedings, docketed in the related case at Dkt. 16 ("AR"). For exhibits and briefs with both internal and Bates-stamped numbering, the Court cites the Bates-stamped page numbers.

which causes seizures three to four times a day. AR 266. Because A.M. is non-verbal and non-ambulatory, she requires one-to-one assistance to participate in any classroom activity and to attend to her basic needs. AR 273. She uses a manual wheelchair and is fed through a feeding tube. AR 273.

### 2.    A.M.'s Relevant Educational History

A.M. was scheduled to start kindergarten in 2022, for what was to be her first year in school. AR 626. Her parents had declined to send her to preschool due to the COVID-19 pandemic, as well as their concerns about the ability of local schools to address A.M.'s complex needs, which were particularly acute after hip surgery and a four-month hospital stay in late 2021. AR 788.

In August 2021, A.M.'s Committee on Special Education ("CSE") met to discuss a plan for her first year of school. AR 169. The meeting produced an IEP for A.M. that recommended a class with 12 students, one teacher, and four teaching assistants (a "12:1:4" classroom"), AR 189, but did not provide for a 1:1 paraprofessional or nurse, AR 195. The Moonsammys considered the plan inadequate to meet A.M.'s needs. AR 194–95. As such, in March 2022, they notified the Department that they were rejecting the Department's proposed placement, and enrolling A.M. in iBrain, where she would have a 1:1 nurse. AR 195.

In May 2022—several months before the start of the regular school year—A.M. began kindergarten at iBrain. AR 543. Around this time, A.M.'s CSE met again, and adopted substantively identical recommendations to the preceding IEP, again placing A.M. in a 12:1:4 classroom. AR 264. This IEP noted, however, that A.M. "require[d] a 1:1 nurse at all times to tend to her physical needs and ensure her medical safety, seizure management, and G-tube feed," AR 233, but declined to recommend a 1:1 nurse because the District's staff did not have the

3

required paperwork, AR 264. The Moonsammys decided to keep A.M. at iBrain, where she has remained since. AR 357, 359–60.

### B.    Administrative Proceedings

#### 1.    The Moonsammys' 2022 Due Process Complaint

On October 18, 2022, the Moonsammys filed a due process complaint with the Department. AR 106–17. It centered on two allegations. First, it alleged that the Department had failed to provide A.M. with a FAPE since August 2020. AR 111–15. It alleged that several aspects of A.M.'s IEPs left her without a FAPE, including her placement in a 12:1:4 classroom, AR 111–12, the limited wheelchair access at the proposed school location, AR 112–13, and the failure to mandate a 1:1 nurse for A.M., AR 115. Second, it alleged that A.M.'s unilateral placement at iBrain was appropriate to address her "academic, physical, and social/emotional needs." AR 116. It sought an order declaring, *inter alia*, that the Department had denied A.M. a FAPE, declaring iBrain an appropriate placement for A.M., requiring the Department to pay A.M.'s accrued tuition and related expenses directly to iBrain, and requiring the Department to fund an independent educational evaluation ("IEE") for A.M. AR 117. The case was assigned to IHO Philip P. Sturges.

On April 27, 2023, after two days of hearings and live testimony from five witnesses, IHO Sturges issued his findings of fact and decision. IHO Sturges applied the *Burlington-Carter* framework.[2] IHO 2023 Op. at 10–13. Under that framework, parents who have unilaterally placed a child in private school are entitled to reimbursement if (1) the Department's IEP violated the IDEA, (2) the parents' alternative placement is appropriate to meet the child's needs,

---

[2] *See School Committee of the Town of Burlington v. Department of Education*, 471 U.S. 359 (1985), and *Florence County School District Four v. Carter ex rel. Carter*, 510 U.S. 7 (1993).

and (3) equitable considerations favor reimbursement. *See E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 451–55 (2d Cir. 2014).

IHO Sturges held for the Moonsammys as to only the second prong, finding for the Department as to the first and third. As to the first prong, IHO Sturges held that the Department offered A.M. a FAPE. IHO 2023 Op. at 10–12. Relevant here, IHO Sturges rejected the argument that A.M. required a full-time 1:1 nurse, finding that "required medical forms to authorize a 1:1 nurse had not been received from the [Moonsammys] at the time of the [2022] IEP meeting." *Id.* at 12. Although "it [was] not necessary" for IHO Sturges to reach the second and third prongs of *Burlington-Carter*, he opted to do so "in order to provide the parties with a complete set of findings" in the case of appellate reversal. *Id.* at 13. As to the second prong, IHO Sturges found "that had the [Moonsammys] prevailed on their claim that the [Department] failed to provide [A.M.] with a FAPE," he would have held that iBrain "is an appropriate placement for [A.M.]." *Id.* But, he noted, he would not have ordered "direct tuition funding," because the Moonsammys "failed to establish that they lacked the financial resources to pay such tuition," and thus "would have only awarded reimbursement." *Id.* As to the third prong, IHO Sturges held that equitable considerations weighed against full tuition reimbursement— specifically, the Moonsammys' "predetermination" to enroll A.M. in iBrain, regardless of the results of the 2022 IEP meeting. *Id.* In his view, such would have warranted a 25% reduction in the reimbursement award. *Id.* As to the request for an IEE, IHO Sturges found that the Moonsammys' "expressed disagreement in the DPC" with the Department's views was "sufficient to warrant the requested IEE." *Id.* at 14. He ordered the Department to fund an IEE by an evaluator selected by the Moonsammys. *Id.*

Both parties appealed.  The Moonsammys argued that IHO Sturges erred as to the first and third prongs of *Burlington-Carter*.  They argued that A.M. had been deprived a FAPE, and that equitable considerations do not warrant reducing any reimbursement award.  AR 60–70. The Department argued that IHO Sturges erred as to the second prong of *Burlington-Carter* and as to the request for an IEE.  In its view, equitable considerations warranted a 100% reduction in any reimbursement award, and the Moonsammys' request for a state-funded IEE should have been denied.  AR 80–89.  The appeal was assigned to SRO Justyn P. Bates.

On July 31, 2023, SRO Bates issued his decision.  He sustained both appeals in part. SRO Dec. at 23–24.

On the Moonsammys' appeal, SRO Bates held they satisfied all three prongs of *Burlington-Carter*.  As to the first prong, he held that A.M. had been deprived of a FAPE based on the Department's failure to consider adequately whether to mandate a 1:1 nurse in A.M.'s IEP.  *Id.* at 14–15.  The IHO erred, he explained, "in accepting the [Department's] explanation that a 1:1 nurse could not be placed on the IEP . . . and that the parents were required to send documentation to another office for a later determination" of such eligibility.  *Id.* at 15.  "Placing the onus on the parents, rather than the [Department], to pursue the further consultation with the district doctor and obtain the required medical forms is problematic," he held, because to uphold such an approach would allow the Department to "delegate its responsibilities . . . under IDEA to the parents."  *Id.*  As to the second prong, he held that the Department's failure to "challenge the IHO's determination"—that iBrain was an appropriate placement for A.M.—left that determination "final and binding on the parties."  *Id.* at 17.  As to the third prong, he rejected the proposition that "predetermination" counseled against full reimbursement.  *Id.*  "[S]o long as the parents cooperate with the district," he stated, "and do not impede the district's efforts to offer a

FAPE, even if the parents had no intention of placing the student in the district's recommended program, it is well-settled that their plan to unilaterally place a student, by itself, is not a basis to deny tuition reimbursement." *Id.* Because all three prongs thus favored the Moonsammys, he held that the Department was obliged to pay their iBrain-related expenses. *See id.* at 24.

He rejected, however, the Moonsammys' request for direct payment to iBrain, rather than reimbursement. He explained that "parents who satisfy the *Burlington* factors" only have "a right to retroactive direct tuition payment relief" where they "lack the financial resources to 'front' the costs of private school tuition" themselves. *Id.* at 20. Because the Moonsammys bore the burden as to this issue, and because "there is no evidence in the hearing record regarding [their] financial resources," he held that "direct payment is not an appropriate form of relief," and the Department need only reimburse the Moonsammys "upon proof of attendance and payment for services delivered." *Id.* at 21.

As to the Department's cross-appeal, he held that "the IHO erred in his decision to grant the parents' request for an IEE at public expense." *Id.* at 24. Such an evaluation, he explained, is required only *before* a parent initiates a due process challenge to her child's IEP. *See id.* at 22–23. Here, however, because the Moonsammys "made their request for an IEE in the due process complaint notice in the first instance," the Department did not have an "opportunity to engage with" the Moonsammys "outside of due process litigation." *Id.* at 23. As such, he held, the Department was not required to fund an IEE. *Id.* at 24.

On November 30, 2023, the Moonsammys filed a Complaint in this Court, seeking judicial review of aspects of the SRO's decision as to A.M.'s IEPs for the 2020–2021, 2021–22, and 2022–23 school years. Specifically, they challenged the SRO's refusal to (1) mandate direct payment to iBrain, (2) award nursing services to A.M., and (3) award an IEE at public expense.

23 Civ. 10491, Dkt. 1. The Department filed an Answer but did not cross-appeal. 23 Civ.

10491, Dkt. 9. Both parties have moved for summary judgment, with briefing scheduled to

conclude on July 5, 2024. 23 Civ. 10491, Dkt. 23.

### 2.    The Moonsammys' 2024 Due Process Complaint

On December 6, 2023, the Moonsammys filed a second due process complaint with the

Department, alleging the Department had failed to offer A.M. a FAPE for the 2023–24 school

year. DPC at 1. That complaint challenged the Department's most recent IEP, put in place on

April 20, 2023, which again recommended a 12:1:4 classroom and again did not mandate a 1:1

nurse for A.M. *See id.* at 4–5. The Moonsammys sought an interim order of pendency declaring

iBrain A.M.'s pendency placement, and a final order declaring that the Department denied A.M.

a FAPE for the 2023–24 school year and requiring the Department to pay A.M.'s tuition at

iBrain. *See id.* at 7–8. The case was assigned to IHO Patricia Le Goff.

On May 2, 2024, after three days of hearings and live testimony from two witnesses, IHO

Le Goff issued her findings of fact and decision. Because her findings are not at issue here, the

Court only briefly summarizes them here. In short, IHO Le Goff found, as the Department

conceded, that the Department had failed to offer a FAPE to A.M., given its failure to "offer a

cogent and responsive explanation" for the 2023 IEP, and its failure to allocate A.M. to a public

school. *See id.* at 10–11. IHO Le Goff also found that iBrain is an appropriate placement for

A.M., *see id.* at 11–16, and that the Moonsammys are entitled to direct funding, rather than

reimbursement, *see id.* at 27. She held, however, that equitable considerations warranted a 50%

reduction in the amount of transportation costs, given the limited records to support such an

expense, *see id.* at 18–23, and did not award funding for 1:1 nursing services, which she

considered unnecessary to provide A.M. a FAPE, *see id.* at 23–27. As to pendency, she denied

the Moonsammys' request, reasoning that "pendency cannot be based on an 'appealed' SRO opinion." *Id.* at 33.

The Moonsammys represent that they intend to appeal IHO Le Goff's decision. Dkt. 19 at 6 n.1.

### C.    Procedural History

On April 6, 2024, the Moonsammys commenced this action to secure a pendency order for the 2023–24 school year. Dkt. 1. On April 12, 2024, the Moonsammys moved for a preliminary injunction. Dkt. 9 ("Pl. Br."). On April 16, 2024, the case was assigned to this Court as related to the Moonsammys' earlier action. That same day, the Court issued an order to show cause, requiring the Moonsammys promptly to serve the Department, and ordering the Department to respond to the Moonsammys' motion within seven days. Dkt. 11. After two extensions, Dkts. 15, 17, on May 1, 2024, the Department opposed the Moonsammys' motion. Dkt. 18 ("Def. Br."). On May 8, 2024, the Moonsammys filed a reply. Dkt. 19 ("Pl. Reply Br.").

## II.    Applicable Legal Standards

The IDEA requires each state that accepts federal education funds to provide all disabled children within its jurisdiction with a FAPE. 20 U.S.C. §§ 1412(1), 1413(a). A FAPE must "emphasize[] special education and related services designed to meet [a disabled child's] unique needs and prepare [the child] for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). To meet this goal, each eligible child has her own Committee on Special Education ("CSE"), comprised of school officials, teachers, and her parents. The CSE is tasked with developing an annual IEP to meet the child's "educational needs." 20 U.S.C. § 1414(d)(1)(A)(i)(II)(bb), (d)(1)(B).

9

When a parent believes that the state has failed to offer her child a FAPE, the parent may file a due process complaint and attend a hearing before an IHO. 20 U.S.C. § 1415(b)(6); N.Y. Educ. Law § 4404(1). Such a complaint initiates an "administrative challenge unrelated to the concept of constitutional due process." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012). If the parent's concerns cannot be resolved at a "[p]reliminary meeting," 20 U.S.C. § 1415(f)(1)(B)(i), the matter proceeds to a hearing before an IHO, *id.* § 1415(f)(1)(A); *see also id.* § 1415(f)(3)(A)(i), who must "determin[e] . . . whether the child received a [FAPE]," *id.* § 1415(f)(3)(E)(i); *see also* N.Y. Educ. Law § 4404(1)(a). The IHO's decision is appealable by either party to an SRO, who must "conduct an impartial review" of the IHO's "findings and decision." 20 U.S.C. § 1415(g); N.Y. Educ. Law § 4404(2). "Any party aggrieved by" the SRO's decision "ha[s] the right" to seek judicial review by filing a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A); *see also* N.Y. Educ. Law § 4404(3)(a).

While a parent's concerns are being litigated, her child is entitled to "remain in the then-current educational placement" at public expense "until all such proceedings have been completed." 20 U.S.C. § 1415(j). This provision—the stay-put provision—"seeks to maintain the educational status quo while the parties' dispute is being resolved." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014). The Second Circuit "has characterized § 1415(j) as 'in effect, an automatic preliminary injunction,' given that it 'substitutes an absolute rule in favor of the status quo'—that is, the maintenance of a student's then-current educational placement—for the standard preliminary injunction analysis involving irreparable harm, the likelihood of success on the merits, and the balance of hardships." *Mendez v. Banks*, 65 F.4th 56, 62 (2d Cir. 2023) (quoting *Zvi D. ex rel. Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982)). To the extent, however, that a parent's requests go beyond

10

maintenance of her child's then-current educational placement—for instance, in seeking immediate reimbursement of pendency tuition—the traditional preliminary injunction factors come back into play, as the stay-put provision "does not create an entitlement to immediate payment." *Id.* at 63–64.[3]

## III.    Discussion

Based on the parties' briefs, this dispute implicates two issues: First, is iBrain A.M.'s pendency placement? Second, if it is, are the Moonsammys entitled to immediate payment, or may the Department pay A.M.'s tuition and transportation expenses in the usual course? The Court considers each question in turn.

### A.    A.M.'s Pendency Placement

The parties first disagree about whether a partially appealed administrative order can establish a child's "then-current educational placement," as required by the IDEA's stay-put provision. 20 U.S.C. § 1415(j). The Moonsammys argue it can, Pl. Br. at 7–8, and the Department argues it cannot, Def. Br. at 4–6. The Court holds with the Moonsammys.

This dispute turns on the definition of "then-current educational placement." In the ordinary case, a child's "then-current educational placement" is the one provided for in the last educational program to which her parents and the Department both agreed. *See Mackey ex rel. Thomas M. v. Bd. of Educ.*, 386 F.3d 158, 163 (2d Cir. 2004). But not always. As the Second Circuit has explained, "if an impartial hearing officer or state review officer finds the parents'

---

[3] In general, a parent is required as a "jurisdictional prerequisite" to exhaust all available state administrative remedies before filing an IDEA suit in federal court. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002). However, where an action, like this one, "alleges a violation of the stay-put provision, such action falls within one, if not more, of the enumerated exceptions to the IDEA's exhaustion requirement." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 530 (2d Cir. 2020) (cleaned up).

new placement to be appropriate by adjudicating the IEP dispute in the parents' favor, and the school district chooses not to appeal the decision," the Department "consent[s], by operation of law, to [the student's] private placement" in her new school. *Ventura de Paulino*, 959 F.3d at 532; *see also Bd. of Educ. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002) ("[O]nce the parents' challenge [to a proposed IEP] succeeds . . . , consent to the private placement is implied by law, and the requirements of § 1415(j) become the responsibility of the school district."). "At that moment, the City assume[s] the legal responsibility to pay for [the new school's] educational services to [the student] as the agreed-upon educational program that must be provided and funded during the pendency of any IEP dispute." *Ventura de Paulino*, 959 F.3d at 532.

That line of authority controls here. By declining to appeal SRO Bates's decision to this Court, the Department consented to A.M.'s placement at iBrain. SRO Bates held, in relevant part, that (1) the Department had deprived A.M. of a FAPE by "fail[ing] to consider 1:1 nurse services in light of [A.M.'s] documented medical needs," and (2) "iBrain was an appropriate unilateral placement" for A.M. SRO Dec. at 15–16. He thus concluded that the Department was required to pay for A.M.'s tuition and transportation-related expenses. *See id.* at 24–25. That decision—which the Department has declined to challenge before this Court—effected a change to the status quo that the Department is obliged to respect "during the pendency of any IEP dispute." *Ventura de Paulino*, 959 F.3d at 532.

That the Moonsammys have appealed collateral aspects of SRO Bates's decision does not deprive the balance of that decision of immediate force. The two relevant aspects of SRO Bates's decision—that (1) A.M. was denied a FAPE and (2) iBrain is an appropriate placement for A.M.—are not implicated in the Moonsammys' appeal. Because "the parents' challenge [to the proposed IEP] succeed[ed]," the Department's "consent to the private placement [on the part

12

of the Department] is implied by law," *Schutz*, 290 F.3d at 484, even if the parents' other

requests—for instance, for direct payment, rather than reimbursement—remain unresolved.

District courts have consistently so held, often awarding parents pendency orders based on non-

final state administrative decisions. *See, e.g.*, *Bd. of Educ. v. J.P.*, No. 18 Civ. 1038 (JMA)

(AYS), 2018 WL 3946507, at *4 (E.D.N.Y. June 21, 2018) (parents entitled to pendency order

based on state administrative decision—which held (1) child's IEP denied FAPE and (2) child's

private school was an appropriate placement—despite pending appeal of that decision); *Dep't of

Educ. v. C.B. ex rel. Donna B.*, No. 11 Civ. 576 (SOM), 2012 WL 2467741, at *3 (D. Haw. June

26, 2012) (same); *Atlanta Indep. Sch. Sys. v. S.F. ex rel. M.F.*, 740 F. Supp. 2d 1335, 1341–42

(N.D. Ga. 2010) (same); *City Sch. Dist. v. Darlene S.*, No. 05 Civ. 572 (JTE), 2006 WL 287871,

at *3–4 (W.D.N.Y. Feb. 6, 2006) (same); *Escambia County Bd. of Educ. v. Benton*, 358 F. Supp.

2d 1112, 1122–24 (S.D. Ala. 2005) (same). The Department, tellingly, does not engage with this

authority, let alone articulate a reason to deviate from it.[4]

     In fact, several courts—including the First, Third, and Ninth Circuits—have gone even

further. They have held that parents are entitled to a pendency order even where the state has

timely appealed an administrative officer's determination as to the *Burlington-Carter* factors—

that is, even when it is unresolved whether the child was denied a FAPE or whether the unilateral

placement is appropriate. On this view, where the parents prevailed below, "the state [is]

---

[4] The Department cites one precedent in support of its claim that it is "black-letter law that an administrative decision that is currently being appealed cannot serve as the basis for pendency," Def. Br. at 5. But that precedent, *Rivas v. Banks*, No. 22 Civ. 10007 (LJL), 2023 WL 8188069 (S.D.N.Y. Nov. 27, 2023), is irrelevant to the issues at hand. In that case, Judge Liman was called upon to determine whether an IHO's pendency order required the Department to pay for the child's nursing services. *See id.* at *12–13. He found that the order was ambiguous and thus remanded the matter to the IHO for clarification. *See id.* at *13. The decision does not address the situation presented here.

responsible for the costs of [the child's] placement during the court review proceedings regardless of which party prevails in this appeal." *Clovis Unified Sch. Dist. v. Cal. Off. of Admin. Hearings*, 903 F.2d 635, 641 (9th Cir. 1990); *see also Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 800–01 (1st Cir. 1984), *aff'd on other grounds*, 471 U.S. 359 (1985)*; M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 119–20 (3d Cir. 2014). Those courts have reasoned that a contrary rule may delay or deter implementation of the administrative decision, and render that decision "of no practical significance" unless and until it is affirmed on appeal. *Susquenita Sch. Dist. v. Raelee S. ex. rel. Heidi S.*, 96 F.3d 78, 84 (3d Cir. 1996). The Second Circuit has not resolved that issue, and this Court does not have occasion to resolve it here. The pertinent point is that, with the Department having declined to challenge the apposite parts of SRO Bate's decision, the Moonsammys' claim to pendency is supported by the case law and consistent with the purpose of the stay-put provision—"to maintain the child's educational status quo." *Ventura de Paulino*, 959 F.3d at 529, 532.

The Court thus holds that iBrain constitutes A.M.'s pendency placement. Because the stay-put provision operates as "an automatic preliminary injunction," *Mendez*, 65 F.4th at 62 (quoting *Zvi D.*, 694 F.2d at 906), the Moonsammys are entitled to a preliminary injunction requiring the Department to fund the services granted by SRO Bates's decision—namely, A.M.'s (1) tuition and (2) transportation to and from school, *see* SRO Dec. at 24–25.[5] As the Moonsammys argue, and the Department does not dispute, this funding must continue until the

---

[5] The Moonsammys state that they are also entitled to pendency payments for A.M.'s nursing services, Pl. Br. at 15. That is wrong, as such would go beyond SRO Bates's order. SRO Bates only awarded "reimbursement of the iBrain tuition costs . . . and reimbursement of transportation costs to and from iBrain." SRO Dec. at 24. He did not award reimbursement of nursing services. Indeed, in the related case, the Moonsammys admit as much—they argue there that SRO Bates "erred in failing to award plaintiffs essential nursing services." 23 Civ. 10491, Dkt. 21 at 19. The Court thus rejects their request for nursing services as a part of pendency.

Moonsammys' challenge to A.M.'s most recent IEP has been resolved, and must include expenses dating to the start of the 2023–24 school year. *See Mackey*, 386 F.3d at 163–66.

**B.    Scope of Injunctive Relief**

The parties separately disagree about one aspect of injunctive relief—whether the Moonsammys are entitled to immediate payment.

The Department is clearly correct that they are not. As the Second Circuit has recently explained, the stay-put provision "does not create an entitlement to immediate payment or reimbursement." *Mendez*, 65 F.4th at 63. Such relief is available only if a child's parents can "establish that a delay or failure to pay has jeopardized their child's educational placement." *Id.* The Moonsammys acknowledge this rule, Pl. Reply Br. at 7, and do not offer evidence of any such harm. On the contrary, as the Department notes, the Moonsammys' enrollment contract with iBrain "suspend[s]" any obligation on their part to pay for A.M.'s tuition until they receive an order on pendency. Dkt. 1, Ex. 3 at 3. The Court thus holds that the Department need only pay the Moonsammys via its "ordinary payment procedures." *Mendez*, 65 F.4th at 63.

**CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part the Moonsammys' motion for a preliminary injunction. Specifically, the Court declares iBrain to be A.M.'s pendency placement and requires the Department to fund A.M.'s placement at iBrain from the beginning of the 2023–24 school year until the Moonsammys' challenge to A.M.'s most recent IEP is resolved. Such funding includes A.M.'s tuition and transportation services, but not her nursing services. The Court does not order the Department to make any payments immediately. A.M.'s payments are instead to be processed in the usual course.

SO ORDERED.

Paul A. Engelmayer
_____
Paul A. Engelmayer
United States District Judge

Dated: June 3, 2024
      New York, New York